OPINION OF THE COURT
William P. Warren, J.
This is an application brought by the Law Guardian for the *32 infant, Adam C., by order to show cause and supporting affirmation dated September 12, 1990. In response to this order to show cause the respondent has submitted an answering affidavit and affirmation of her counsel. The petitioner who is appearing pro se in this proceeding, submitted a letter to the court dated September 1990 and a second letter dated September 28, 1990.
The first branch of the application asks for an order directing that Sam C. be added as a necessary respondent. All parties have consented to this relief and, therefore, the court grants that aspect of the application.
The second branch of the motion asks for an order directing all parties (including petitioner, Alan B., and respondent, Mary V., and proposed respondent, Sam C.) to submit to psychiatric and psychological evaluations by the Rockland County Forensic Unit, or, in the alternative, by a psychiatrist of the Law Guardian’s selection. In support of this application, the Law Guardian claims that in making a determination in this proceeding, the best interests of the child must be considered and cites in support of such a position Matter of Ettore I. v Angela D. (127 AD2d 6). The Law Guardian claims that he requires these psychiatric and psychological evaluations of all of the parties because without that information there is no way for him to determine what is in the best interests of this child. He further requests that the hearing to be held in this matter not be limited solely to proof as to who the biological father of Adam C. is, but also to extend to the broader issue of the child’s best interests.
Respondent’s counsel consents to the psychiatric and psychological evaluations requested by the Law Guardian. He goes further and requests that the Rockland County Probation Department conduct an investigation of the parties. He annexes to his affirmation an affidavit from his client setting forth a number of incidents involving the petitioner and his behavior. He claims that the main purpose of filiation statutes are to secure the health, welfare and happiness of the child and that, therefore, the court must be aware of the parties’ background and have expert evaluations of their behavior. He cites to this court no case law but does make reference to the noted treatise, Disputed Paternity Proceedings by Schatkin.
The letters received by the court from the petitioner, pro se, indicate that while he vehemently disputes the allegations contained in the respondent’s affidavit, he does not object to *33 the motion and consents to the psychological evaluations requested.
The facts in this case insofar as they pertain to the determination of this motion are as follows. On May 5, 1989 the petitioner filed this petition in this court seeking a determination of paternity and alleging that he had sexual intercourse with the respondent between April 29, 1988 and August 30, 1988. As a result, she became pregnant and gave birth to a male child on the 23rd day of April 1989. On May 4, 1989 the petitioner, Alan B., filed a petition for visitation for the same child.
The court has thoroughly reviewed Matter of Ettore I. v Angela D. (supra). Factually, there are some significant differences between that case and the one before this court. The facts of the Ettore I. case reveal that the child was born on August 24, 1981 and on or about June 1, 1984, when the child was approximately 2 years and 9 months of age, the paternity petition was commenced. In this case, the paternity petition was commenced when the child was approximately 12 days of age. At some point in the Ettore I. proceeding, the Law Guardian raised the issue of the doctrine of equitable estoppel as a defense to the petitioner’s claim of paternity. The argument was made that the petitioner should be precluded from asserting any claim of paternity because he had allowed a protracted period of time to elapse before instituting the proceeding. Therefore, he had indirectly promoted or at least acquiesced in the establishment and growth of the parent-child bond between the child and the mother’s husband. In the Ettore I. case, at the time the child was conceived the mother was married to someone other than the petitioner. The evidence before the court indicated that the petitioning putative father did not act upon his rights but rather permitted the husband to assume all parental responsibilities for the child. The Family Court disposed of the equitable estoppel defense by claiming that the courts had not applied it to a man claiming paternity of a child.
The Appellate Division reversed the Family Court and held: "We note that, in general, the doctrine of equitable estoppel may successfully be invoked, in the interest of fairness, to prevent the enforcement of rights which would ultimately work fraud or injustice upon the person against whom enforcement is sought (see, Nassau Trust Co. v Montrose Concrete Prods. Corp., 56 NY2d 175, 184). An estoppel defense may also be invoked where the failure to promptly assert a right has *34 given rise to circumstances rendering it inequitable to permit the exercise of the right after a lapse of time (see, 57 NY Jur 2d, Estoppel, Ratification, and Waiver, § 27).” (Matter of Ettore I. v Angela D., 127 AD2d 6, 12.)
The court thereafter quoted from the case of Matter of Sharon GG. v Dwayne HH. (95 AD2d 466, 468-469, affd 63 NY2d 859) wherein it was stated: "Estoppel is equally as applicable to a paternity proceeding in Family Court as it was to the divorce actions in the cited cases. In each instance, the purpose of the challenge to the paternity of the mother’s husband was to deprive him of his parental rights and status, with a concomitant loss of rights and status for the child * * * the desirability that the child know its true father * * * is not sufficient to overcome the undisputed equities in the husband’s favor nor the benefits to the child accruing by preserving its legitimacy.”
Therefore, it is clear to this court that the defense of equitable estoppel is available to be raised by a respondent in a paternity proceeding. However, the instant application, if granted, would not assist the court in making a determination as to whether the doctrine of equitable estoppel applies. The Law Guardian seeks psychiatric and psychological evaluations of the parties to the proceeding. He bases that request upon a necessity to determine what is in the best interests of the child. While this court will not preclude the Law Guardian or the respondent from raising at the hearing the issue of equitable estoppel, it does not believe that psychiatric and psychological evaluations of the party will aid it in that determination.
A review of the case law in this area reveals no fact pattern comparable to the instant one. (See, Johannessen v Johannessen, 148 AD2d 894; Matter of Campbell v Campbell, 149 AD2d 866; Matter of Vilma J. v William L., 151 AD2d 758; Purificati v Paricos, 154 AD2d 360; Matter of Cortland County Dept. of Social Servs.. v Thomas ZZ., 141 AD2d 119.) The facts and circumstances in connection with this proceeding which may bear upon the issue of equitable estoppel may be brought out at hearing without the necessity of psychiatric or psychological evaluations. The nature of the relationship between the petitioner and the respondent Mary V., as well as the relationship between the respondent Mary V. and the respondent Sam C. may be established. Whether there was any delay by the petitioner in asserting his claim of paternity and, if so, whether any reliance was based thereupon by the respondent *35 may also be explored at such a hearing. But this court will not convert this proceeding to a "custody” proceeding which would be the effect if the application by the Law Guardian and the request by the respondent Mary V. for a probation investigation were granted.
Therefore, the application is denied and the matter shall proceed to hearing on the scheduled date of October 10 at 9:30 A.M.