Egan Jr., J.
Appeal, by permission, from an order of the Family Court of Saratoga County (Jensen Bergan, J.), entered August 25, 2011, which, in a proceeding pursuant to Family Court Act article 5-B, among other things, dismissed respondent’s equitable estoppel defense.
In January 2011, petitioner, a resident of Alabama, commenced this proceeding pursuant to the Uniform Interstate Family Support Act (see Family Ct Act art 5-B) against respondent, a New York resident, seeking a DNA test to establish that respondent is the biological father of the subject child (born in 2001) and, in conjunction therewith, an award of child support. At the initial appearance in this matter, a Support Magistrate concluded — based upon a notation contained in the underlying petition — that the proceeding should be transferred to Family Court to determine whether equitable estoppel would bar petitioner from seeking the requested relief (see Family Ct Act § 439 [b]). Following respondent’s unsuccessful motion to dismiss, a hearing was held, at the conclusion of which Family *1606 Court, among other things, dismissed respondent’s equitable estoppel defense and ordered respondent to undergo DNA testing. This appeal by respondent ensued.[1]
We affirm. “[T]he doctrine of equitable estoppel may be used by a purported biological father to prevent a child’s mother from asserting biological paternity — when the mother has acquiesced in the development of a close relationship between the child and another father figure, and it would be detrimental to the child’s interests to disrupt that relationship” (Matter of Juanita A. v Kenneth Mark N., 15 NY3d 1, 6 [2010]; see Matter of Kristen D. v Stephen D., 280 AD2d 717, 719 [2001]). The party raising this defense — here, respondent — bears the initial burden of proof (see Matter of Edward WW. v Diana XX., 79 AD3d 1181, 1182 [2010]), and application of the doctrine “ ‘does not involve the equities between the . . . adult[ ]’ ” participants (Matter of Dustin G. v Melissa I., 69 AD3d 1019, 1020 [2010], lv denied 14 NY3d 708 [2010], quoting Matter of Shondel J. v Mark D., 7 NY3d 320, 330 [2006]). Rather, in the context of a paternity proceeding, “it is the child’s justifiable reliance on a representation of paternity that is considered” (Matter of Savel v Shields, 58 AD3d 1083, 1084 [2009]; accord Matter of Stephen W. v Christina X., 80 AD3d 1083, 1084 [2011], lv denied 16 NY3d 712 [2011] [2001]) and, therefore, “the doctrine of equitable estoppel will be applied only where its use furthers the best interests of the [subject] child” (Matter of Derrick H. v Martha J., 82 AD3d 1236, 1238 [2011] [internal quotation marks and citation omitted]; see Matter of Felix O. v Janette M., 89 AD3d 1089, 1090 [2011]; Matter of Savel v Shields, 58 AD3d at 1084).
Here, based upon our review of the record as a whole, we cannot say that Family Court erred in dismissing respondent’s equitable estoppel defense. To be sure, petitioner testified that “Eddie,” her long-time friend, fleeting romantic interest and occasional roommate, has served as a “father figure” for the child since the child was three months old. Notably, petitioner acknowledged that Eddie has called the child “his son” — as have various members of Eddie’s family — and that the child, in turn, has referred to Eddie as “dad”; indeed, petitioner testified that she previously told both the child and other individuals that Eddie was the child’s father.[2] The record also reflects that Eddie and the child have engaged in a number of activities *1607 together over the years and that, despite the fact that both petitioner and Eddie were — as of the time of hearing — involved in relationships with other people, the child and Eddie still enjoyed regular and frequent telephone contact with one another and saw each other approximately every three weeks.
Although respondent asserts that the foregoing is sufficient to make a prima facie showing of “a recognized and operative parent-child relationship” (Matter of Lorie F. v Raymond F., 239 AD2d 659, 660 [1997]), we disagree. Noticeably absent from the record is any indication that Eddie “played a significant role in raising, nurturing or caring for the child” (Matter of Commissioner of Social Servs. v Julio J., 94 AD3d 606, 606 [2012]), “provided food, clothing and shelter for the child for most of [his] life” (Matter of Edward WW. v Diana XX., 79 AD3d at 1183) or otherwise “carried out all [the] traditional responsibilities of a father” (Matter of Kristen D. v Stephen D., 280 AD2d at 719).* *[3] Similarly, while the record indeed establishes that Eddie served as a father figure for the child, petitioner identified three other individuals — her boyfriend, her father and a family friend — as father figures for the child, noting that her boyfriend and the child also address each other as “son” and “dad,” respectively. Finally, the record does not support a finding that the child truly believed Eddie to be his biological father, as evidenced by, among other things, petitioner’s testimony that the child asked for permission to call Eddie “dad” (compare Matter of Edward WW. v Diana XX., 79 AD3d at 1183; Matter of Savel v Shields, 58 AD3d at 1084). In short, the record fails to establish that the child “would suffer irreparable loss of status, destruction of [his] family image, or other harm to [his] physical or emotional well-being if this proceeding were permitted to go forward” (Matter of Derrick H. v Martha J., 82 AD3d at 1239 [internal quotation marks and citations omitted]; compare Matter of Dustin G. v Melissa I., 69 AD3d at 1020). Accordingly, Family Court’s order dismissing respondent’s equitable estoppel defense is affirmed. Respondent’s remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.
Rose, J.E, Malone Jr., Stein and Garry, JJ., concur. Ordered that the order is affirmed, without costs.

. Respondent was granted a stay of Family Court’s order pending appeal.

. The frequency with — or the context in — which petitioner made these statements is not disclosed by the record, and her testimony in this regard conflicts with her statements that the child “knew all about [respondent] and *1607 had sent [respondent] some letters and different things” and, more importantly, that “from the time that [the child] was old enough to understand, [she] never tried to make him think that anyone else was . . . his biological father.”

. Although it appears that petitioner and the child intermittently stayed with Eddie (including from late 2009 to late 2010), there is nothing in the record to suggest that they resided together — as a family — throughout the child’s lifetime (compare Matter of Stephen W. v Christina X., 80 AD3d at 1085).