## State of New York
## Supreme Court, Appellate Division
## Third Judicial Department

Decided and Entered:   January 7, 2016                    520461
_____

In the Matter of PATRICK A.,
                    Respondent,

    v                                      MEMORANDUM AND ORDER

ROCHELLE B.,
                    Appellant.

(And Another Related Proceeding.)
_____

Calendar Date:   November 16, 2015

Before:   McCarthy, J.P., Egan Jr., Rose, Lynch and Clark, JJ.

_____

        Samuel D. Castellino, Big Flats, for appellant.

        Andrea Mooney, Ithaca, attorney for the children.

_____

Egan Jr., J.

        Appeal, by permission, from an order of the Family Court of
Cortland County (Revoir Jr., J.), entered January 26, 2015,
which, in two proceedings pursuant to Family Ct Act article 5,
ordered genetic testing for the purpose of establishing
petitioner's paternity of respondent's children.

        Petitioner and respondent had an intimate relationship
beginning in 2002 and, in February 2005, respondent gave birth to
twin girls.  According to respondent, petitioner, who was one of
four individuals who potentially could be the girls' father, was
present for the birth but declined to sign an acknowledgment of
paternity due to financial concerns.  The record reflects that
petitioner either lived with or otherwise had some degree of
contact with respondent's daughters until December 2013, at which

time respondent purportedly cut off all contact. Thereafter, in July 2014, petitioner commenced the instant proceedings seeking an order of filiation declaring that he is the father of respondent's twin girls. Respondent and the attorney for the children opposed the petitions — with the attorney for the children taking the position that petitioner should be equitably estopped from asserting his paternity. A fact-finding hearing ensued, at the conclusion of which Family Court found that equitable estoppel did not apply here and ordered a genetic marker test to determine whether petitioner is the girls' biological father. This appeal by respondent ensued.[1]

"The doctrine of equitable estoppel is a defense in a paternity proceeding which, among other applications, precludes a man . . . from asserting his paternity when he acquiesced in the establishment of a strong parent-child bond between the child and another man" (Matter of Edward WW. v Diana XX., 79 AD3d 1181, 1182 [2010] [internal quotation marks and citations omitted]; see Matter of Juanita A. v Kenneth Mark N., 15 NY3d 1, 6 [2010]; Matter of Stephen W. v Christina X., 80 AD3d 1083, 1085 [2011], lv denied 16 NY3d 712 [2011]). The party asserting application of the doctrine — here, the attorney for the children — "has the initial burden of establishing a prima facie case to support that claim" (Matter of Edward WW. v Diana XX., 79 AD3d at 1182; see Matter of Starla D. v Jeremy E., 95 AD3d 1605, 1606 [2012], lv dismissed 19 NY3d 1015 [2012]). Assuming that burden is met, the burden then shifts to the nonmoving party — here, petitioner — to establish that it would be in the best interests of the children to order the genetic marker test (see Matter of Edward WW. v Diana XX., 79 AD3d at 1182).

Assuming, without deciding, that the attorney for the children may raise such a defense on behalf of respondent's children in the first instance, we agree with Family Court that application of the doctrine of equitable estoppel is not warranted here. Although the children's therapist testified on

---

[1] This Court granted respondent permission to appeal from Family Court's nondispositional order and, further, granted respondent's application for a stay pending appeal.

direct (and respondent testified on rebuttal) that the girls do not recognize petitioner as their father, "[n]oticeably absent from the record is any indication that [another identified individual] played a significant role in raising, nuturing or caring for [respondent's children]" (Matter of Starla D. v Jeremy E., 95 AD3d at 1607 [internal quotation marks and citation omitted]). To the contrary, both the therapist and respondent acknowledged that the children identified a number of individuals as "father figures" in their lives (see id.). Hence, establishing petitioner's paternity would not disrupt an existing parent-child relationship between the children and another individual (compare Matter of Mark T. v Joyanna U., 70 AD3d 1068, 1069-1070 [2010], lv denied 15 NY3d 715 [2010]; Matter of Dustin G. v Melissa I., 69 AD3d 1019, 1020 [2010], lv denied 14 NY3d 708 [2010]).

As for petitioner's level of involvement with the children prior to the commencement of these proceedings, the parties admittedly presented divergent accounts of petitioner's interaction with the girls. Petitioner testified that he lived with respondent from 2002 until he was incarcerated in state prison in February 2010 — subject to brief periods of time when he either removed himself from the residence or was incarcerated in the local jail — and that he again lived with respondent after his release from prison in December 2011. Following their birth in 2005, petitioner testified, he helped with the children on a regular basis — making breakfast for them, caring for them while respondent was at work, building a swing set for them and attending certain school functions. Petitioner also testified — without contradiction — that he spoke with the girls twice a week during the 22 months that he was incarcerated in state prison. Petitioner further testified that he met with the girls' therapist on four occasions.[2] In November 2012, petitioner "got in some trouble," as a result of which he spent six months in jail and seven months in a rehabilitation facility. Petitioner

---

[2] The therapist testified as to two such meetings — one following petitioner's release from prison "because . . . he was going to be living at [respondent's] house" and one in or about December 2011 to formulate a behavior plan for the girls.

testified that, during his last three months in rehab, he spoke with the girls on the phone and respondent brought the girls to see him six or seven times. Prior to the hearing, petitioner last saw the girls at a school concert in December 2013, and it appears that he delayed the commencement of these proceedings because he was, up until that time, seeing and/or speaking with the girls on a regular basis. Respondent did not contest petitioner's claims regarding his phone contact with the girls, but otherwise downplayed the role that petitioner played in their lives — contending that petitioner only lived with her approximately 29 months between 2002 and 2012, that she only took the girls to see petitioner twice while he was in rehab and that petitioner only attended two school functions.

Upon reviewing the record, and according "due deference to Family Court's credibility determinations" (Matter of Zahuranec v Zahuranec, 132 AD3d 1175, 1177 [2015]), we agree with Family Court that "there is simply no beneficial parent-child relationship [between the children and another individual] requiring estoppel's protection." Although the attorney for the children, relying upon the therapist's testimony and petitioner's criminal history, argues that it would be detrimental to the children's best interests to proceed with the genetic marker testing, two points are worth noting. First, the attorney for the children failed to make out a prima facie case for application of the doctrine of equitable estoppel; hence, the burden never shifted to petitioner to establish that the requested testing would be in the children's best interests. More to the point, even assuming that the children's best interests represent the overarching inquiry here, given petitioner's long-standing relationship with the children, we are hard pressed to discern the negative impact of formally identifying him as the girls' father. Accordingly, we perceive no basis upon which to disturb Family Court's decision to order the genetic marker testing. Respondent's remaining arguments, including her assertion that Family Court abused its discretion in failing to conduct a Lincoln hearing in these matters, have been examined and found to be lacking in merit.

McCarthy, J.P., Rose, Lynch and Clark, JJ., concur.

ORDERED that the order is affirmed, without costs.



                    ENTER:

                    Robert D. Mayberger
                    Clerk of the Court